[Civ. No. 14026.   First Dist., Div. Two.   Sept. 8, 1949.]

WILLIAM A. BARNETT et al., Respondents, v. JESSE LEE GARRISON et al., Appellants.

Campbell, Hayes & Custer, Frank L. Custer and Edward J. Niland for Appellants.

James F. Boccardo and John E. Longinotti for Respondents.

NOURSE, P. J.—This is an appeal by defendant from an order granting a motion for a new trial in a wrongful death action after a verdict in his favor. The court granted the motion on the ground of errors in law occurring at the trial, viz.: 1. The giving of instructions upon the defense of assumption of risk; 2. having instructed on that defense the refusal of instructions proposed by plaintiffs upon the burden of proving said defense and upon the presumption that the deceased exercised ordinary care for her own concerns. Appellant contends that the giving and refusal of the instructions in question was not erroneous and at any rate not prejudicial because as a matter of law the evidence was in-

sufficient to establish negligence of defendant or plaintiffs' right to any recovery.

Plaintiffs, the parents of Imogene Barnett, brought this action for the death of their 18-year-old daughter in an automobile accident.

Decedent at the time of the accident was living at the home of her uncle defendant Jesse Lee Garrison in Seaside, California, and worked as a secretary at Fort Ord. Her parents lived together in Campbell, California, but the mother had just obtained an interlocutory decree of divorce. On March 10, 1946, Imogene, her uncle and the uncle's family left Seaside for a visit to the parents in Campbell in a 1940 four-door De Soto sedan, driven by defendant Jesse Lee Garrison. Past Santa Cruz the fuel pump of the car failed; defendant Elmer Garrison, a younger brother of Jesse Lee, was called to their assistance and came with a 1935 two-door Chevrolet coach, which was used to tow them back. Jesse Lee fastened the De Soto behind the Chevrolet tying the bumpers together by coiling the tow rope of the De Soto in 10 loops around the center of the bumpers, leaving a 6-inch slack between them. Imogene Barnett and a daughter of Jesse Lee of her age rode with Elmer in the Chevrolet, Jesse Lee and the other members of his family in the De Soto. They drove back the same way they had come with a stop of 15-30 minutes in Santa Cruz to try to find a fuel pump. On a down-grade portion of the highway from Santa Cruz to Watsonville the accident happened. Down the long incline the cars reached a speed of 40 miles per hour, the heavier car pressing against the lighter car in front. Jesse Lee, in the De Soto, braked and thereafter the Chevrolet began to veer to the left over into the center lane of the three-lane road. Jesse Lee braked with more force and when the Chevrolet, although slowing up, still went to the left, he applied the brakes forcibly and at the same time turned his wheels to the right. Notwithstanding the fact that Elmer also braked and tried to steer to the right, his car, whose front wheels, according to his testimony, seemed to be off the ground, went over the embankment at the left side of the road, turning over and throwing the two girls out. The De Soto also rolled over the embankment and fell on the girls, killing them both.

Defendant Elmer Garrison testified that decedent had not seen the manner in which the cars were tied together but also that prior to the stop at Santa Cruz the Chevrolet "got

out of control a little bit''; he and the girls talked about it, mentioning it casually. He did not understand what caused it. This evidence is noted by the parties in relation to the alleged assumption of risk by decedent.

■ However, if the evidence in the case as a whole would be insufficient as a matter of law to support a verdict in favor of plaintiffs, the order appealed from should be reversed irrespective of the correctness of the court's rulings on the instructions. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 168 [153 P.2d 338].) ■ But there is sufficient evidence supporting defendant Jesse Lee Garrison's negligence (the action as to the other defendants was dismissed with prejudice) and plaintiffs' loss to go to the jury. With respect to possible negligence there was evidence that Jesse Lee caused the heavier car to be towed by the lighter car on a road which he knew was winding and hilly and that he chose the manner in which he tied the cars together; that he permitted his heavier car to coast in neutral; that he continued the manner of towing although on every downgrade the heavier De Soto rested against the Chevrolet; that at the fatal moment he turned his wheels to the right because, as he testified, he ''tried to cut them (the cars) in two.'' Whether, as contended by appellant, no ordinary, reasonable man could have foreseen that the above behavior might cause unreasonable danger is a matter of fact for the jury, not of law for the court. ■ Neither can it be said that the evidence as a matter of law did not support any compensable loss of either of the parents by the death of their daughter. ''In an action for wrongful death of a minor child the damages consist of the pecuniary loss to the parents in being deprived of the services, earnings, society, comfort and protection of the child.'' (*Fuentes* v. *Tucker*, 31 Cal.2d 1, 5 [187 P.2d 752]). Here there was evidence that decedent was an intelligent, healthy and well-liked girl in cordial relationship with her parents; that during her high school years she gave to her mother all money she earned by various activities, which included working in a cannery; that she also worked in a cannery from the end of her last high school term until Christmas, 1945. That in 1946, she stayed and worked in Monterey with the consent of her parents to whom she returned almost every week end; that she had her first Fort Ord paycheck with her when she was killed on a trip intended as a visit to her parents. As against these facts, clearly indicating loss of earnings, society and comfort, a jury should

weigh the circumstances relied on by appellant, mainly that Mrs. Barnett failed to list Imogene in her divorce complaint as a minor child because she thought she was old enough and quite on her own, and evidence of her "going steady with a young man." These circumstances do not exclude compensable loss as a matter of law.

It is true that under the circumstances of this case the mother was not a proper party plaintiff. (Code Civ. Proc., § 376; *Fuentes v. Tucker, supra,* 31 Cal.2d 1, 9-10. However, this is not a matter of substance excluding any recovery and therefore relevant to this appeal, but only a matter of misjoinder of parties which cannot be decisive as to the correctness of the granting of a new trial. Moreover objection to the impropriety of her joinder was waived when it was not objected to by special demurrer or answer. (*House v. Pacific Greyhound Lines,* 35 Cal.App.2d 336, 343 [95 P.2d 465].)

We therefore must review whether any errors justified the granting of the motion for a new trial. "It is well settled that the granting of a motion for a new trial rests so completely within the discretion of the trial judge that an appellate court will not interfere with his action unless a manifest and unmistakable abuse of discretion clearly appears. Upon an appeal from an order granting a new trial, all presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground although the reviewing court might have ruled differently in the first instance. And since a new trial may be granted upon the ground that the jury was erroneously instructed upon matters of law, the question for decision is whether this wide discretion was abused in granting (plaintiff's) motion." (*Mazzotta v. Los Angeles Ry. Corp., supra,* 25 Cal.2d 165, 169; citations omitted.)

Assuming without deciding that there was some evidence which possibly could support defendant's theory of assumption of risk, in which case defendant was entitled to the instructions based on this theory (*Ritchey v. Watson,* 204 Cal. 387, 388, 390 [268 P. 345]), it was no abuse of discretion for the court, having given such instructions, to hold that plaintiffs were entitled to a specific instruction requested by them as to the burden of proof with respect to that defense, notwithstanding the fact that a general instruction that the party who asserts the affirmative of an issue must carry the burden of proving it, had been given. No instruc-

tion was given to the effect that assumption of risk was an affirmative defense asserted by the defendant. ▆ At any rate the ruling was in line with the principle that the giving of a general instruction which covers the subject in an abstract way does not justify the refusal of a requested particular instruction correctly applying the law to a specific matter. (64 C.J. 890; 53 Am.Jur. 426.) In *Abelseth* v. *San Francisco,* 129 Cal.App. 552, 557 [19 P.2d 53], this court held that an instruction that the burden of proving contributory negligence rested on the defendants should have been given, although the record in that case shows that an instruction had been given stating that in civil cases the affirmative of the issue must be proved. It is true that there are situations in which the general instruction so clearly and fully covers the subject matter that the refusal of a requested specific instruction need not be erroneous (compare *Sinclair* v. *Pioneer Truck Co.,* 51 Cal.App. 174, 176-177 [196 P. 281]). However, whether that was the case here or whether plaintiffs were entitled to the requested clarification is a fairly debatable matter of opinion. The trial court's ruling that the refusal was prejudicial error can then not be disturbed as a manifest abuse of discretion. (*Pettigrew* v. *O'Donnell,* 32 Cal. App.2d 502 [90 P.2d 93].) Other errors alleged to justify the order need not be discussed.

Order affirmed.

Goodell, J., and Dooling, J., concurred.